Jonathan D. Weiss, SBN 280803
jweiss@hwangweiss.com
LAW OFFICES OF HWANG & WEISS, P.C.
99 S. Lake Ave.
Suite 201
Pasadena, CA 91101
Telephone (626) 441-2383
Facsimile (626) 441-2293

Attorney for Plaintiff
Craig Scott Muhlrad

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Craig Scott Muhlrad;<br><br>Plaintiff,<br><br>v.<br><br>The City of San Marino, California;<br><br>Defendant. | Case No: 2:21-cv-05491<br><br>**Complaint Under the First and Fourteenth Amendments to the U.S. Constitution and Their California Analogues** |

## Introduction

1. City parks—the quintessential public forum—hold a special place in the American political system. "[T]hey have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the [traditional public fora] has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens." *Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515 (1939). As a consequence of this special status, the government's ability to restrict expressive conduct in public parks is at its nadir.

2. The City of San Marino, California (hereinafter "the City") has an official policy that discriminates amongst speakers seeking to access Lacy Park—the City's only park. Speakers likely to have a message in which the City concurs—such as residents and city employees—may enter Lacy Park for free to engage in protected speech. Others must pay a weekend access fee.

3. Moreover, upon pain of imprisonment, the City polices the content of speech within Lacy Park. The municipal code requires speakers to obtain permission from the city manager before engaging in "boisterous . . . insulting or indecent language."

4. These policies are anathema to our national values. They cannot be abided.

## Jurisdiction and Venue

5. The Court has subject matter jurisdiction over this action pursuant to the following statutory provisions: 28 U.S.C. § 1331(federal questions jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Venue is proper in this district. The City is located within this district. Moreover, the events giving rise to this action occurred within this district. As a consequence, venue is proper in the Central District of California per 28 U.S.C. § 1391(b).

///

///

## Parties

7. Craig Scott Muhlrad (hereinafter "Muhlrad") is a natural person. He is, and was at all relevant times, a resident of Los Angeles County. He is, and was at all relevant times, not a resident of the City.

8. The City of San Marino is a California city located within Los Angeles County. The City promulgates and enforces policies regarding the use of Lacy Park—a public park located within its borders. The City is sued in its official capacity.

## Muhlrad's Speech Activity

9. The election of President Trump in 2016 impelled Muhlrad into political advocacy.

10. During the 2018 mid-term election, Muhlrad volunteered to call potential voters and urge them to support Democratic candidates.

11. As the various campaigns for the 2020 presidential election began, Muhlrad was drawn to the policies of Senator Elizabeth Warren and became determined to support her candidacy.

12. In furtherance of that goal, Muhlrad went to Lacy Park on Sunday November 3, 2019 for the purpose of engaging with his fellow citizens by discussing his support for Senator Warren's candidacy and distributing literature supporting her.

13. Upon arrival at Lacy Park, a gate attendant confronted Muhlrad and informed him that individuals who are not residents of San Marino are required to pay a five-dollar admission fee for access to the park on weekends.

14. Muhlrad informed the gate attendant that he would be conducting electioneering activity and inquired as to whether there is an exception to the fee for such use of the park.

15. After learning this fact, the gate attendant became increasingly hostile. He first insisted that Muhlrad was not permitted to speak in support a candidate in Lacy Park without obtaining permission. After Muhlrad explained his planned activities, the gate

attendant stated that if Muhlrad wanted to engage in advocacy within Lacy Park, he must pay a five-dollar access fee.

16. Because Muhlrad desired to engage with his fellow citizens in Lacy Park, he acquiesced in paying the five-dollar access fee. As Muhlrad was entering the park, the gate attendant admonished him not to bother anybody.

17. After gaining access to Lacy Park, Muhlrad approached his fellow citizens and handed them leaflets expressing his support for Senator Warren's candidacy.

18. Muhlrad desired to engage verbally with his fellow citizens as well. However, provision of the San Marino municipal code chilled his advocacy. He worried that if he became too enthusiastic in communicating his support for Senator Warren his speech might be deemed criminally "boisterous." He also was concerned that if he used strong language in talking about the various weaknesses of Senator Warren's competitors that his speech would be deemed criminally "insulting or indecent." As a result of his fear of criminal sanctions for violating the City's municipal code, Muhlrad's speech activities were chilled and not as robust as they would have been otherwise.

19. Though the 2020 presidential election is now over, Muhlrad desires to continue to engage in future electioneering activities and political advocacy in Lacy Park on the weekends. However, both his fear of criminal liability for violating the park's speech code and his reluctance to the pay the discriminatory five-dollar non-resident admission fee are deterring him from doing so. Muhlrad would continue to engage in speech activities in Lacy Park if those obstacles were removed.

**The City's Discriminatory Policy with Respect to Access to Lacy Park**

20. Starting in the late 1980s, the City instituted a charge for non-residents to access Lacy Park on the weekends.

21. At all times relevant to this complaint, the City's policy—duly enacted as a resolution of the City's council—was as follows:

> The City charges $5 for non-residents to enter Lacy Park on weekends. . . . There is no entrance fee for employees of the City and the San Marino Unified School District, and up to three (3) non-resident guests over the age of four, and up to three (3) non-resident guests of a resident (when accompanying a resident above the age of four). Lacy Park, *City of San Marino*, https://www.cityofsanmarino.org/community/faqs/lacy_park.php (last visited July 3, 2021).

22. The City's policy does not provide for a waiver of the Lacy Park access fee for non-residents seeking to enter the park on weekends to engage in protected speech activities.

23. Based on a review of documents produced in response to a public records request, the rationale for the discriminatory access fee is ensuring that non-residents pay their fair share for access to the park. However, the City's five-dollar fee is not supported by any methodology designed to accomplish this result; it appears to be a number selected at random. Specifically, it is not calculated to capture the marginal costs of a non-resident's visit to Lacy Park.

24. Charging a fee for a speaker to access a public forum that is not calculated based on the cost to the City per visitor to that forum is constitutionally unsound. *E.g.*, *Kempner v. Town of Greenwich*, 562 F.Supp.2d 242, 250 (D. Conn. 2008).

25. The fact that the fee is discriminatory raises the additional constitutional objection that certain speakers are afforded preferred access to a public forum while others—including Muhlrad—are forced to pay a fee. "Prohibited . . . are restrictions distinguishing among different speakers . . . . Speech restrictions based on the identity of the speaker are all too often simply a means to control content. Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional

Complaint Under the First and Fourteenth Amendments to the U.S. Constitution and Their California Analogues

wrong when by law it identifies certain preferred speakers." *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 340 (2010).

26. Additionally, the discriminatory fee is unconstitutional under equal protection principles as the fundamental right of freedom of speech of some speakers, but not others, is burdened. "We have long been mindful that where fundamental rights and liberties are asserted under the Equal Protection Clause, classifications which might invade or restrain them must be closely scrutinized and carefully confined." *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 670 (1966).

27. Moreover, the proffered rationale for the discrimination—making sure non-residents pay their fair share—is inadequate under any level of scrutiny. The five-dollar weekend access fee is not supported by data relating to the cost to the city of a non-resident's visit to Lacy Park.

## The City's Policy of Policing Speech in Lacy Park

28. The City forbids visitors to Lacy Park from "engage[ing] in loud, boisterous, threatening, abusive, insulting or indecent language" unless "specifically allowed by the city manager." San Marino, California, Municipal Code § 17.02.06(C).

29. Any person who violates this ordinance "shall be guilty of a misdemeanor unless such a violation or failure . . . is subsequently prosecuted as an infraction at the discretion of the city prosecutor, in which case, such person is guilty of an infraction." San Marino, California, Municipal Code § 01.04.01(A).

30. The maximum penalty that may be imposed for a violation of this ordinance is a "fine of not more than one thousand dollars ($1,000.00) or . . . imprisonment for a period of not more than six (6) months, or … both." San Marino, California, Municipal Code § 01.04.03(A).

31. The constitutional infirmities with this scheme are legion. First, the categories of banned speech—particularly "boisterous," "insulting," and "indecent" speech—are excessively vague. Muhlrad's speech was chilled as he was unsure whether it would be

construed as violating the City's ordinance. "Because First Amendment freedoms need breathing space to survive, government may regulate in the area only with narrow specificity." *NAACP v. Button*, 371 U.S. 415, 433 (1963). Indeed, "when a statute or regulation by its vagueness or overbreadth threatens to deter the exercise of first amendment freedoms, we require of it greater precision and specificity than would be necessary to fulfill fifth or fourteenth amendment due process requirements." *Adamian v. Jacobsen*, 523 F.2d 929, 932 (9th Cir.1975).

32. Second, the ban on "insulting" and "indecent" speech is viewpoint discrimination. "Giving offense is a viewpoint." *Matal v. Tam*, 137 S. Ct. 1744, 1763 (2017). Viewpoint discrimination in a public forum is repugnant to the First Amendment and its California analogue.

33. Third, there are no guidelines in the ordinances or from any other source cabining the discretion of the city manager who is empowered to grant permission to engage in otherwise banned speech. "[W]e hold a municipality cannot . . . require all who wish to disseminate ideas to present them first to police authorities for their consideration and approval, with a discretion in the police to say that some ideas may, while others may not, be carried to the homes of citizens." *Schneider v. New Jersey*, 308 U.S. 147, 164 (1939).

34. Please note that Muhlrad has standing to press this theory notwithstanding the fact that he did not seek permission from the City Manager to engage in otherwise banned speech. "[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 755-56 (1988).

35. The fact that Muhlrad was not prosecuted for violating San Marino, California, Municipal Code § 17.02.06(C) does not strip him of standing to challenge the ordinance.

Complaint Under the First and Fourteenth Amendments to the U.S. Constitution and Their California Analogues

His speech was chilled by fear of prosecution, and this compelled self-censorship is a legally cognizable injury. *Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury.").

## Causes of Action

### Count 1: Violation of 42 U.S.C. § 1983—Discriminatory Forum Access Fee

36. Paragraphs 1 through 35 of this complaint are incorporated by reference as though fully re-alleged in this cause of action.

37. This is an as-applied challenge.

38. The City passed a resolution enacting the policy described in paragraph 21 under color of state law.

39. The policy described in paragraph 21 was adopted via a resolution passed by the City's council and is therefore an official policy of the City as it is resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

40. The policy described in paragraph 21 is unconstitutional because it imposes an access fee for a traditional public forum that is not tethered to the actual cost to the City of permitting individuals to access the forum in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

41. The policy described in paragraph 21 is unconstitutional because it effectuates speaker discrimination in a public forum by burdening the speech of certain speakers but not others with an access fee in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

42. The policy described in paragraph 21 is unconstitutional because it discriminates with respect to the exercise of the fundamental right of freedom of speech in violation of the Equal Protection clause of the Fourteenth Amendment to the U.S. Constitution.

43. The purported justification for the discriminatory forum access fee—making sure that non-residents pay their fair share—cannot survive any level as scrutiny as the fee was not calculated with reference to the marginal cost of a non-resident's visit to Lacy Park.

44. As a direct and proximate result of the City's unlawful conduct, Muhlrad was damaged in the amount of five dollars and is additionally facing the continuing irreparable harm of being deterred from engaging in further speech activity in Lacy Park.

45. The violations described in the proceeding paragraphs are ongoing and will continue until and unless this Court grants the relief Muhlrad seeks by this complaint.

**Count 2: Violation of Article 1 §§ 2, 3, and 7 of the California Constitution—Discriminatory Forum Access Fee**

46. Paragraphs 1 through 35 of this complaint are incorporated by reference as though fully re-alleged in this cause of action.

47. This is an as-applied challenge.

48. The City passed a resolution enacting the policy described in paragraph 21 under color of state law.

49. The policy described in paragraph 21 was adopted via a resolution passed by the City's council and is therefore an official policy of the City as it is resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

50. The policy described in paragraph 21 is unconstitutional because it imposes an access fee for a traditional public forum that is not tethered to the actual cost to the City of permitting individuals to access the forum in violation of Article 1 §§ 2 & 3 of the California Constitution.

51. The policy described in paragraph 21 is unconstitutional because it effectuates speaker discrimination in a public forum by burdening the speech of certain speakers

but not others with an access fee in violation of Article 1 §§ 2 & 3 of the California Constitution.

52. The policy described in paragraph 21 is unconstitutional because it discriminates with respect to the exercise of the fundamental right of freedom of speech in violation of Article 1 § 7 of the California Constitution.

53. The purported justification for the discriminatory forum access fee—making sure that non-residents pay their fair share—cannot survive any level as scrutiny as the fee was not calculated with reference to the marginal cost of a non-resident's visit to Lacy Park.

54. As a direct and proximate result of the City's unlawful conduct, Muhlrad was damaged in the amount of five dollars and is additionally facing the continuing irreparable harm of being deterred from engaging in further speech activity in Lacy Park.

55. The violations described in the proceeding paragraphs are ongoing and will continue until and unless this Court grants the relief Muhlrad seeks by this complaint.

**Count 3: Violation of 42 U.S.C. § 1983—San Marino, California, Municipal Code § 17.02.06(C).**

56. Paragraphs 1 through 35 of this complaint are incorporated by reference as though fully re-alleged in this cause of action.

57. This is both an as-applied and facial challenge.

58. The City duly enacted San Marino, California, Municipal Code § 17.02.06(C) under color of state law.

59. The policy described in San Marino, California, Municipal Code § 17.02.06(C) was adopted via an ordinance passed by the City's council and is therefore an official policy of the City as it is resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

///

Complaint Under the First and Fourteenth Amendments to the U.S. Constitution and Their California Analogues

60. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its ban on "boisterous," "insulting," and "indecent" speech is so vague as to chill constitutionally protected speech by not adequately delineating what is prohibited in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

61. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its ban on "insulting," and "indecent" speech constitutes viewpoint-discrimination in a traditional public forum in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

62. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its vests unlimited permitting discretion in the city manager in violation of the First Amendment to the U.S. Constitution as incorporated by the Fourteenth Amendment.

63. As a direct and proximate result of the City's unlawful conduct, Muhlrad is facing the continuing irreparable harm of being deterred from engaging in further speech activity in Lacy Park.

64. The violations described in the proceeding paragraphs are ongoing and will continue until and unless this Court grants the relief Muhlrad seeks by this complaint.

**Count 4: Violation of Article 1 §§ 2 & 3 of the California Constitution —San Marino, California, Municipal Code § 17.02.06(C).**

65. Paragraphs 1 through 35 of this complaint are incorporated by reference as though fully re-alleged in this cause of action.

66. This is both an as-applied and facial challenge.

67. The City duly enacted San Marino, California, Municipal Code § 17.02.06(C) under color of state law.

68. The policy described in San Marino, California, Municipal Code § 17.02.06(C) was adopted via an ordinance passed by the City's council and is therefore an official

policy of the City as it is resulting from a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

69. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its ban on "boisterous," "insulting," and "indecent" speech is so vague as to chill constitutionally protected speech by not adequately delineating what is prohibited in violation of Article 1 §§ 2 & 3 of the California Constitution.

70. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its ban on "insulting," and "indecent" speech constitutes viewpoint-discrimination in a traditional public forum in violation of Article 1 §§ 2 & 3 of the California Constitution.

71. The policy described in San Marino, California, Municipal Code § 17.02.06(C) is unconstitutional because its vests unlimited permitting discretion in the city manager in violation of Article 1 §§ 2 & 3 of the California Constitution.

72. As a direct and proximate result of the City's unlawful conduct, Muhlrad is facing the continuing irreparable harm of being deterred from engaging in further speech activity in Lacy Park.

73. The violations described in the proceeding paragraphs are ongoing and will continue until and unless this Court grants the relief Muhlrad seeks by this complaint.

## Prayer for Relief

Wherefore Muhlrad prays:

1. The Court award Muhlrad five dollars in compensatory damages for Count 1;
2. The Court award Muhlrad nominal damages;
3. The Court declare that the City's discriminatory weekend Lacy Park access fee is unconstitutional, under the United States and California constitutions, as applied to non-residents such as Muhlrad who seek to enter Lacy Park for the purpose of engaging in speech activity;

4. The Court declare that the challenged provisions of San Marino, California, Municipal Code § 17.02.06(C) are facially unconstitutional under the United States and California constitutions;

5. The Court enjoin the City from charging access fees to non-residents, such as Muhlrad, who seek to enter Lacy Park on the weekends for the purposes of engaging in speech activity;

6. The Court enjoin the City from enforcing the challenged provisions of San Marino, California, Municipal Code § 17.02.06(C);

7. The Court award Muhlrad costs of the suit pursuant to 28 U.S.C. § 1920, 42 U.S.C. §1988, and any other appropriate statutory basis;

8. The Court award Muhlrad attorney's fees pursuant to 42 U.S.C. § 1988, California Code of Civil Procedure § 1021.5, and any other appropriate statutory basis;

9. The Court award any other relief that it deems just and proper;

## JURY DEMAND

Muhlrad demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: July 5, 2021						By: /s/ Jonathan D. Weiss, Esq.
							Jonathan D. Weiss, Esq.
							Attorney for Craig Scott Muhlrad

Complaint Under the First and Fourteenth Amendments to the U.S. Constitution and Their California Analogues